JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WADE M. RHYNE (CABN 216799)
Assistant United States Attorney

   1301 Clay Street, Suite 340-S
   Oakland, California 94612
   Telephone: (510) 637-3693
   Facsimile: (510) 637-3724
   E-Mail: wade.rhyne@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>    Plaintiff, <br> v. <br> ERNEST PASCUAL BACA, <br>    Defendant. | No. CR-07-0659 DLJ <br><br> **GOVERNMENT'S APPEAL OF PRE-TRIAL RELEASE ORDER FOR DEFENDANT ERNEST PASCUAL BACA** <br><br> Date: <br> Time: <br> Court:   Hon. D. Lowell Jensen |

**INTRODUCTION**

Pursuant to 18 U.S.C. § 3145(a), the United States files this appeal of Magistrate Judge Wayne D. Brazil's July 18, 2008 Order granting pre-trial release of Defendant Ernest Pascual Baca to a half-way house upon execution of a bond in the amount of $250,000. The underlying facts of the charged offense, as well as Defendant's significant criminal history, demonstrate that Defendant is both significant flight risk and a danger to the community. More specifically, this Court should order the continued detention of Defendant because:

•    Defendant is a documented Norteño gang member who was on felony parole at the time of his arrest for the charged offense;

GOV. APPEAL TO PRE-SENTENCING RELEASE ORDER
No. CR-07-0659 DLJ                1

- At the time of his arrest for the charged offense Defendant was carrying narcotics and an arsenal of firearms in his car, including: (1) a loaded 9 millimeter semiautomatic pistol hidden under the front passenger seat; (2) a second loaded 9 millimeter pistol magazine; (3) six additional firearms—three shotguns and three high caliber hunting rifles—in the trunk; (4) approximately three grams of methamphetamine in the center console of his car; and (5) a portable police scanner;
- Defendant is a violent felon with seven prior convictions, including: (1) felony convictions for attempted robbery and possession of methamphetamine; (2) three misdemeanor convictions for use/possession of controlled substances; and (3) two additional misdemeanor convictions;
- Defendant has failed to appear for court appearances on five occasions;
- The court has revoked his probation on at least ten occasions;
- Defendant has an apparent substance abuse problem; and
- The weight of the evidence is strong and based on his criminal history and the number of firearms at issue, Defendant faces a serious sentence under the Sentencing Guidelines.

For these reasons, as more fully explained below, the United States respectfully requests this Court to detain Defendant pending trial.

## BACKGROUND

A.   **The Defendant's Arrest**

On August 2, 2007, Officer Armando Magana ("Office Magana") of the Fremont Police Department was on patrol in his marked patrol car. (*See* Exhibit A, Fremont Police Department – Investigation Report, at p. BACA-0014.) At approximately 1:32 a.m., Officer Magana observed Defendant driving a green Toyota Corolla near the intersection of Mowry Avenue and Glenview Drive. (*Id*.) Defendant, who was the sole occupant of the car, came to an extended stop at a stop sign and then parked the car approximately 50 yards north of the Mowry/Glenview intersection. (*Id*.) Officer Magana saw Defendant get out his car and begin to walk down the

1 sidewalk. (*Id*.) The officer recognized Defendant from "previous contact," but could not
2 remember his name. (*Id*.)

3 From the middle of the roadway, Officer Magana initiated a consensual encounter with
4 Defendant. (*Id*.) While seated behind the wheel of his patrol car, Officer Magana initiated a
5 conversation through the passenger-side window of the patrol car. (*Id*.) Officer Magana did not
6 shine his patrol lights or spotlight during the encounter. (*Id*.) Officer Magana asked whether
7 Defendant was related to Greg Lopez, and Defendant replied that he was not. (*Id*.) Officer
8 Magana then asked a few standard questions—none of which Defendant truthfully answered.
9 First, the officer asked for Defendant's name; and he replied that his name was "Chris Baca."
10 (*Id*.) Second, the officer asked whether Defendant had a valid driver's license and whether he
11 was on probation; and he stated that he had a valid license and that he was not on probation. (*Id*.)
12 Defendant then told the officer that he was visiting his girlfriend, Ana Cueva, who lived at the
13 corner of Mowry and Glenview. (*Id*.) Officer Magana then told Defendant to have a safe night
14 and began to drive away. (*Id*.)

15 Immediately after driving away, Officer Magana recalled Defendant's true name as Ernie
16 Baca—an known Irvington Norteño Gang member. (*Id*.) Upon realizing that Defendant had
17 provided a false name, Officer Magana turned the patrol car around and re-approached him near
18 the corner of Mowry and Glenview. (*Id*.) Officer Magana got out of his patrol car and
19 confronted Defendant about providing a false name; and Defendant again untruthfully stated that
20 his name was "Chris Baca." (*Id*.) The officer stated that he recognized Defendant as "Ernie
21 Baca." (*Id*.) In response, Defendant again untruthfully insisted that he was not "Ernie Baca."
22 (*Id*.) Officer Magana told Defendant that he did not appreciate dishonesty, and again asked for
23 Defendant's name. (*Id*.) Defendant then admitted that his name was Ernie Baca, that he was on
24 parole, and that he lied because he did not want to "make a scene" in front of his "girlfriend's
25 house." (*Id*.)

26 Officer Magana ran a record check on Ernest Baca and confirmed that he was on active
27 parole for robbery and was driving on a suspended/revoked license. (*Id*.) He also observed that
28

Defendant had a tattoo of a "Huelga" bird on his life elbow—which based on Officer Magana's training and experience is a common tattoo among Norteño gang members. (*Id*.)

In conducting a pat-down search of Defendant, Officer Magana noted that Defendant was not in possession any car keys despite the fact that he had just gotten out of his car. (*Id*.) In attempting to explain the absence of car keys, Defendant told the officer that:

- He had been out to dinner at Denny's with his girlfriend, Ana Cueva. (*Id*.)
- He and his girlfriend had driven his girlfriend's car to Denny's. (*Id*.)
- He had returned to his girlfriend's neighborhood because he left his cell phone in her car. (*Id*.)
- He did not have his car keys in his possession because he had given them to his girlfriend. (*Id*.)

In response to those representations, Officer Magana inquired why Defendant had given his car keys to his girlfriend if he only intended to recover his cell phone. (*Id*.) After hesitating at the officer's question, Defendant told the officer that:

- The car he was driving actually belonged to his mother. (*Id*. at BACA-0015.)
- His girlfriend's family was interested in buying his mother's car. (*Id*.)
- He had actually planned on leaving the car with his girlfriend. (*Id*.)

In an attempt to confirm Defendant's apparently conflicting statements, Officer Magana knocked on Defendant's girlfriend's front door. (*Id*.) Before speaking with her, the officer confirmed that she was also on active probation. (*Id*.)

Defendant's girlfriend told Officer Magana that Defendant's name was "Ernie Baca" and that Defendant had *not* given his car keys to her. (*Id*. (emphasis added).) Officer Magana again asked Defendant where he had placed his car keys. (*Id*.) Defendant—while looking at his girlfriend—again replied that he *had* given the keys to her. (*Id*. (emphasis added).) Officer Magana had no further questions for Defendant's girlfriend, and she returned home. (*Id*.) He then placed Defendant under arrest for making a false representation to a peace officer and for driving on a suspended license. (*Id*.)

After arranging for a towing company to haul Defendant's car—and before the car's inevitable inventory search—Officer Magana conducted a plain view search of the passenger compartment with his flashlight. (*Id.*) Officer Magana observed Defendant's car keys on the passenger-side floor board and the handle of a handgun under the passenger-side seat. (*Id.*) Prior to the towing of Defendant's car, Officer Magana gained access to the car to remove the handgun. (*Id.*) After gaining access to the car, Officer Magana confirmed the presence of a loaded black 9 millimeter semi-automatic pistol hidden under the passenger-side seat. In the passenger compartment of the car, he also found a pink slip with Defendant's name, an unlabeled medicine bottle containing approximately three grams of methamphetamine, and a portable handheld police scanner. (*Id.*) In the trunk of the car, he found three long gun boxes, each containing two long firearms—three shotguns and three high caliber rifles. (*Id.* at BACA-0016; *See also* Exhibit B, Evidence Photos of the Defendant's Firearms.)

Officer Magana then re-contacted Defendant's girlfriend, Ana Cueva. (*See* Exhibit A, BACA-0016.) She stated that Defendant had arrived and departed in his car earlier that day, that she never entered Defendant's car, that she had never seen him drive that car before, that she had no knowledge of the firearms in his car, and that she had never spoken with Defendant about the firearms. (*Id.*)

### B. The Indictment

On October 18, 2007, the Grand Jury returned a single count indictment against defendant for being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1). (*See* Exhibit C, Indictment.)

### C. Detention Hearing

On July 18, 2008, Defendant appeared for a pre-trial detention hearing before Judge Brazil and requested his release. Among other things, Defendant proffered that he wanted to be release so that he could see his wife and seven-month-old baby. He also contended that his family, namely his elderly grandparents, were prepared to sign a bond on his behalf.

1    Pre-Trial Services and the United States opposed Defendant's request.  Pre-Trial Services
2 recommended that Defendant be detained on grounds that he presented a danger to the
3 community.  In their report, Pre-trial Services cited to Defendant's significant criminal history,
4 the facts of the charged of offense, his apparent substance abuse problem, his prior violent
5 conduct, and his repeated refusals to comply with court orders.  The United States agreed with
6 Pre-Trial Services and moved for Defendant's continued detention on grounds that he presented a
7 danger to the community, and because he also posed a significant risk of flight.  The United
8 States relied on Defendant's status as a paroled violent felon and gang member, his ten probation
9 revocations, his multiple failures to appear, and a previous arrest report wherein Defendant
10 reportedly threatened to kill someone for "snitching" by holding a gun to their head.  Although
11 the arrest did not result in a conviction, the United States cited the incident because, like the
12 current case, it allegedly involved a serious firearm-related offense.
13    Judge Brazil disagreed with both Pre-Trial Services and the United States and ordered
14 Defendant to a half-way house after execution of a bond in the amount of $250,000.

## LEGAL STANDARD

16    18 U.S.C. § 3145(a)(1) provides, pertinent part, that, "[i]f a person is ordered released by
17 a magistrate judge, ... the attorney for the government may file, with the court having original
18 jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions
19 of release." 18 U.S.C. § 3145(a)(1).  This Court reviews the magistrate judge's decision de novo.
20 *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).  In conducting its reviews, the
21 district court may hold additional evidentiary hearings, but is not required to do so.  *Id*.
22    The Bail Reform Act requires courts to apply the least restrictive condition or
23 combination of conditions that will reasonably assure the appearance of the person as required
24 and the safety of the community.  18 U.S.C. § 3142(c)(2); *United States v. Motamedi*, 767 F.2d
25 1403, 1405 (9th Cir. 1985).  The Government bears the burden of showing a flight risk by a
26 preponderance of the evidence and a danger to the community by clear and convincing evidence;
27 however it is not necessary to prove both.  *Id*. at 1406; *United States v. Kouyoumdjian*, 601 F.
28 Supp. 1506, 1508-10 (C.D. Cal. 1985); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir.

1991). Section 3142(g) sets forth the factors that courts should consider when determining whether there are conditions of release that will reasonably assure the defendant's appearance and the community safety: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id*. Of these factors, the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## ARGUMENT

The United States will address the factors set forth in Section 3124(g), in turn.

### A.  The Nature and Seriousness of the Offense Charged

The first factor is the nature and circumstances of the offense charged. 18 U.S.C. § 3142(g). In the current case, the Grand Jury has charged Defendant with the possession of multiple firearms and ammunition in violation of 18 U.S.C. § 922(g)(1). The facts and circumstances underlying the charged offense convincingly compel one conclusion—that Defendant's continued detention is the only way to protect the community and to assure his presence in court.

There is no lawful explanation for a paroled gang member with a history of violence and substance abuse to be on the street at 1:32 a.m. in possession of the items found in Defendant's car. The only reasonable explanation was that Defendant had an intent to engage in conduct that presents a danger to the community. The possession of the portable handheld police scanner makes the nature of the offense even more serious because it evinces an intent to avoid police entanglement and detection. Whether Defendant intended to sell his arsenal of firearms, sell his methamphetamine, or was just in possession of the items for later use or sale, the only conclusion is that Defendant had an intent to break the law and he was undeterred by the consequences of his prior convictions. Such conduct placed the community in serious danger.

The nature of the charged offense also demonstrates that Defendant is a flight risk. When Officer Magana approached Defendant, he engaged in multiple acts to escape the encounter. Specifically, Defendant: (1) attempted to conceal his car keys in anticipation of Officer Magana's approach; (2) attempted to mislead the officer as to his true identity by telling repeated lies about his true name; and (3) attempted to get assistance from other people as a means to corroborate his untrue representations. In short, Defendant's offense-related conduct raises serious concerns about his intent to avoid responsibility for the charged offense. Because, the procedural posture of Defendant's case has become increasingly serious, so to has his motive to flee.

### B.   The Weight of the Evidence

The second factor to consider is the weight of the evidence against Defendant. 18 U.S.C. § 3142(g). Although Defendant has indicated that he will seek to suppress the evidence taken from his car, the evidence remains strong. Officer Magana observed Defendant driving the car as the sole occupant, the car contained a pink slip in Defendant's name, Defendant exhibited an immediate consciousness of guilty by attempting to distance himself from the car and its contents at the first sight of police, and Defendant repeatedly attempted to mislead police once they approached him. The detailed nature of Defendant's actions described in the police report demonstrate a relatively strong case against Defendant at this stage of the prosecution.

### C.   Defendant's Character, Past Conduct, and Criminal History

Next, the court should consider Defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history. 18 U.S.C. § 3142(g). As to this factor, the current record demonstrates that Defendant is both a danger and a flight risk. As noted in the Pre-Trial Services report, Defendant has sustained a total of seven prior convictions including: (1) felony convictions for attempted robbery and possession of methamphetamine; (2) three misdemeanor convictions for use/possession of controlled substances; and (3) two additional misdemeanor convictions. He also has exhibited a repeated refusal to follow instruction by failing to appear five times, and by having his probation revoked at least ten times. Defendant's record demonstrates a pattern of behavior supporting his continued detention because he is both a flight risk and a danger.

### D.     The Nature and Seriousness of the Danger to the Community

Finally, the Court must consider the nature and seriousness of the danger that Defendant poses to any other person or the community. As to this factor, the record strongly supports the position taken by the United States and Pre-Trial Services.

Defendant had no legitimate purpose in possessing the combination of items he had in his car at 1:32 a.m. on the night of his arrest. The seriousness of Defendant's offense-related conduct viewed against the backdrop of his criminal record, shows previous courts have been unable to deter him. Defendant did not commit a minor technical violation of the law in this case. Rather, his conduct had an extremely high potential of causing imminent danger to himself, the police, and/or the community.

### **CONCLUSION**

For these reasons, the United States respectfully requests this Court to detain Defendant pending trial. As a documented Norteño gang member and a paroled violent felon with a history of abusing drugs and violating court instructions, the only way to ensure Defendant's continued appearance and the safety of the community is to detain him pending trial.

DATED: July 21, 2008                                                Respectfully submitted,

                                                                                   JOSEPH P. RUSSONIELLO
                                                                                   United States Attorney

                                                                                   /s/ WMRy

                                                                                   _____
                                                                                   WADE M. RHYNE
                                                                                   Assistant United States Attorney