1 | BARRY J. PORTMAN
Federal Public Defender
2 | NED SMOCK
Assistant Federal Public Defender
3 | 555 - 12th Street
Suite 650
4 | Oakland, CA 94607-3627
Telephone: (510) 637-3500
5 |
Counsel for Defendant BACA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>ERNEST BACA,<br><br>        Defendant. | No. CR-07-0659 DLJ<br><br>DEFENDANT'S RESPONSE TO GOVERNMENT'S APPEAL OF PRETRIAL RELEASE ORDER |

## I. INTRODUCTION

After a contested detention hearing on July 18, 2008, Magistrate Judge Brazil ordered Ernest Baca released to a halfway house on stringent conditions along with a $250,000 bond secured by the equity in his grandparents' home. The defense had sought Mr. Baca's release to live at his grandparents' home with an unsecured bond. Magistrate Judge Brazil instead granted release from the jail with a requirement that Mr. Baca be placed at a halfway house, where his activities can be closely controlled and monitored. The Bail Reform Act requires magistrate judges to apply the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. U.S.C. § 3142(c)(2). The halfway house placement with a secured bond appropriately balances the

DEF. RESPONSE RE: RELEASE ORDER
APPEAL                                   1

considerations described therein.  This Court should uphold Magistrate Judge Brazil's decision, which accounted for all of the issues raised in the government's brief.

## II. DISCUSSION

At the detention hearing, the defense sought release for Mr. Baca to the home of his grandparents so that he could spend time with his children, work, and meet with his attorney at his office to prepare his defense.  The government, relying upon the arguments included in its July 21, 2008 brief, argued for continued detention.[1]  During the extended hearing, Magistrate Judge Brazil considered the concerns raised by the government, including Mr. Baca's criminal history and the nature of the pending charges.  Those concerns made him unwilling to release Mr. Baca to his grandparents' home.  Magistrate Judge Brazil opted to place Mr. Baca in a controlled environment at the halfway house to address concerns about danger to the community and set a very high *secured* bond to assure Mr. Baca's appearance in court.  This is precisely the type of careful analysis and weighing expected of magistrate judges under the Bail Reform Act.

A large contingent of a dozen family members attended the detention hearing to support Mr. Baca.  Present in court were both of Mr. Baca's parents, his grandparents, his wife along with their infant, his step-son, an uncle, and five cousins.[2]  All family members were prepared to sign a bond assuring Mr. Baca's appearance.  In addition, Mr. Baca's grandparents indicated their willingness to post their home, which has significant equity.  Magistrate Judge Brazil brought five family members into the well to discuss the significance of signing a bond on Mr. Baca's behalf.  All five remained willing to do so. Both of Mr. Baca's parents, his wife, and his

---

[1]The defense objects to the government's reference to allegations against Mr. Baca that did not result in a conviction.  As Magistrate Judge Brazil correctly noted at the detention hearing, it is inappropriate to rely upon allegations that have never been proven or admitted.

[2]All of these family members expect to attend court this Friday unless there are difficulties getting permission from employers to miss work.

DEF. RESPONSE RE: RELEASE ORDER
APPEAL                                    2

grandparents all signed the bond, and the bond will be secured by the grandparents' home. The family members who signed the bond are all reputable members of the community. Mr. Baca's mother is the property manager at the Sisters of the Holy Family convent in Fremont. Mr. Baca's father and grandfather are retired. Mr. Baca's grandmother still works at a nearby Kohl's. Judge Brazil also spoke directly to Mr. Baca at length, explaining the seriousness of his obligations to abide by the terms of pretrial release and that he would be thrown back into jail and risk costing his family dearly should he have any problems.

There is not a significant risk that Mr. Baca will fail to appear in court on these charges. Mr. Baca has lived in the East Bay for his entire life. Everything and everyone he has known and loved in his life - including his step-son and his infant daughter - are here, and he has no reason or incentive to flee. Most, if not all, of the prior failures to appear cited by the government in its brief occurred when Mr. Baca was in custody on other matters and was not transported to court. This often resulted in revocation of probation. For example, four failures to appear and at least five probation revocations occurred on one case, a DUI misdemeanor for which Mr. Baca had been sentenced to 14 days jail, probation, and a DUI class. A review of the pretrial report, which is drawn from a rap sheet printout containing little detail, make clarification of this issue difficult, but it is likely that these failures to appear and probation revocations result mainly from failures to attend the DUI class. It is clear that Mr. Baca was in custody on other matters on many of the dates in question.[3] Even more importantly, Mr. Baca has proven in a prior case that he is not a risk of flight. In a 2000 felony case, Mr. Baca was released on bail and made several appearances, including reporting for court on the date of his sentencing, despite the fact that he was aware he would be going into custody that day.

Any other potential concerns about flight risk are addressed by the high secured bond.

---

[3] For example, Mr. Baca began serving a 16 month sentence in the California Department of Corrections on April 15, 2002 and there was a "failure to appear" in the DUI case on June 14, 2002.

DEF. RESPONSE RE: RELEASE ORDER
APPEAL                                      3

1  Mr. Baca's grandparents agreed to risk losing their home, which they have owned for 46 years,
2  because they are certain that he will appear for court. At the detention hearing, Magistrate Judge
3  Brazil emphasized to both Mr. Baca and his grandparents the significance of the secured bond
4  and the consequences should Mr. Baca violate his terms of release. Mr. Baca assured the court
5  and his family that he would comply.

6  With respect to any concern about danger to the community, of Mr. Baca's five prior
7  criminal convictions, four were based upon *possession* of controlled substances.[4] He has one
8  conviction for attempted robbery when he was approximately 22 years old for which the original
9  sentence was seven months in jail and five years of probation. Even more importantly,
10 Magistrate Judge Brazil did not order Mr. Baca released from jail to roam the streets without
11 supervision. Mr. Baca will be held at the halfway house and will be able to leave only when he
12 has permission from his pretrial services officer. Any concern about substance abuse can be
13 addressed with regular urinalysis. Of course, should Mr. Baca test positive for narcotics, he will
14 face revocation of his pretrial release. As Magistrate Judge Brazil stressed at the detention
15 hearing, one slip-up will get Mr. Baca returned to custody.

16 Mr. Baca has an added incentive to comply with his terms of pretrial release - his wife
17 gave birth to their first child while Mr. Baca has been in custody on these charges. Their
18 daughter, Amaya, is now seven months old, and Mr. Baca is anxious to hold her for the first time
19 and spend time with her. This was the primary motivation for Mr. Baca when he sought pretrial
20 release. In addition, Mr. Baca has a five year old step-son, Nathan, who lives with his
21 grandparents and his mother. Mr. Baca would like to be able to spend time with Nathan, who
22 calls Mr. Baca "Dad", in a setting that is more conducive to visiting for children.

---

26  [4]The government claims in its brief that Mr. Baca has five misdemeanor convictions. In fact, he has three. He has two infractions for disturbing the peace when he was 21 years old.

DEF. RESPONSE RE: RELEASE ORDER
APPEAL                                              4

### III. CONCLUSION

The strict conditions of release fashioned by Judge Brazil, in combination with the $250,000 bond signed by five family members and secured by the home of Mr. Baca's grandparents, should more than adequately provide this Court with assurance that Mr. Baca will appear in Court and will not pose a threat to the community while he is at the halfway house. Magistrate Judge Brazil's decision should be upheld.

Dated: July 23, 2008

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

/S/ Ned Smock

NED SMOCK
Assistant Federal Public Defender